DOWD, J.

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| United States of America, | ) | |
| | ) | CASE NO. 1:06 CR 0291 |
| Plaintiff(s), | ) | |
| | ) | |
| v. | ) | MEMORANDUM OPINION |
| | ) | AND ORDER |
| Michael W. Lewis and Daniel P. O'Neil, | ) | |
| | ) | |
| Defendant(s). | ) | |
| | ) | |

Defendants jointly moved the Court to dismiss Count 1 of the Superseding Indictment, arguing that it "fails to allege that the Defendants actively sought to instigate and perpetrate the crime of extortion under color of official right by taking affirmative steps to solicit and induce a public official to accept a bribe." (Doc. No. 113, at 1).[1]  For the reasons set forth below, the motion to dismiss Count 1 was denied.

Defendants' key argument relies on an unpublished decision of the U.S. District Court for the Eastern District of Tennessee.  In United States v. Brock, No. 1:04-CR-188, 2005 WL

---

[1] The Court issued an Order on November 6, 2006 denying this motion as having been filed out of rule.  See Doc. No. 115.  However, the Court noted that defendants might want to move for acquittal under Fed.R.Crim.P. 29 at the close of the government's case and, in anticipation of that likelihood, the government was invited to file a supplemental brief addressing the arguments raised in the defendants' motion.  The government has done so.  See Doc. No. 129.  The defendants did, indeed, make the Rule 29 motion orally on the record and the Court denied it from the bench, reserving the right to issue this written ruling.

(1:06 CR 0291)

1334948 (E.D. Tenn. June 6, 2005),[2] the court addressed a question not yet decided by the Sixth Circuit, namely, "whether a private person who pays a bribe to a public official can be prosecuted under 18 U.S.C. § 1951 for conspiracy to commit extortion under color of official right." Id. at *6.

The reasoning underlying the Brock defendant's argument was that private citizens cannot be reached under the Hobbs Act, which makes it illegal to extort money or property from others under color of *official* right. Indeed, the Sixth Circuit has held that private persons who are not in the process of becoming public officials generally cannot be prosecuted for *substantive* offenses under the Hobbs Act color-of-official-right extortion theory. See United States v. Saadey, 393 F.3d 669, 674 (6th Cir. 2005). However, the Saadey Court, citing United States v. Collins, 78 F.3d 1021, 1032 (6th Cir. 1996), also recognized that private individuals can be reached under the Hobbs Act when they either conspire with, or aid and abet, a public official in the act of extortion. Saadey, 393 F.3d at 675.

In Brock, the defendant was charged with conspiring with a public official in violation of the Hobbs Act. However, the factual twist, as in the instant case, is that the private party paid a bribe to the public official (not the other way around) in return for the promise of business. Therefore, the defendant was, in effect, the "victim" of the extortion, i.e., the payor of the bribe. Brock noted that other courts have allowed prosecution of such "victims" where "the payor actively induces, solicits or procures the public official's 'extortion,' i.e., the payor does more

---

[2] The Brock case is on appeal. See Sixth Circuit Case No. 05-6621. The final briefs were filed on September 27, 2006. According to the docket of the Sixth Circuit as of the date of this Order, the case has not yet been set for oral argument.

(1:06 CR 0291)

than merely agree to, or acquiesce in, the payment of the bribe." Brock, at *6 (citing cases, including United States v. Nelson, 486 F.Supp. 464, 490-95 (W.D.Mich. 1980) and cases from the First, Fourth and Fifth Circuits).  Because the indictment in Brock alleged that the defendant "actively solicited the agreement and cooperation of a public official," it was sufficient to charge a criminal offense under 18 U.S.C. § 1951.

It is this "actively solicited" language which defendants argue is lacking in Count 1 of the instant case.

This Court does not read Brock (which has not been cited or relied upon by any other court and which is currently on appeal) as *requiring* the magic language of "active solicitation." Rather, the indictment simply must sufficiently allege that the defendants were more than passive participants, that is, not true "victims," but rather instigators.

Here, the superseding indictment alleges the following in the "General Allegations" section:

> 5.  In or about 1998, MICHAEL W. LEWIS, DANIEL P. O'NEIL and Terrence W. Gasper agreed that MICHAEL W. LEWIS and DANIEL P. O'NEIL would provide Terrence W. Gasper with a condominium, Unit E-21, Coral Harbour, and deeded boat slip #63, both located in the Coral Harbour Condominium Complex, Islamorada, Florida, in return for favorable consideration from Terrence W. Gasper with respect to obtaining OBWC [Ohio Bureau of Workers' Compensation] investment business and maintaining existing investment OBWC business which affected interstate and foreign commerce.

The General Allegations then outline a process by which, in November 1998, Gasper and his girlfriend allegedly picked out a condominium and boat slip in Florida, entered into a binding and assignable contract to buy them for $345,000 (¶6), and gave a mere $500 good faith down payment to secure the contract (¶7).  Within days, as alleged in the General Allegations,

3

(1:06 CR 0291)

defendant Lewis "contacted the real estate agent representing [Gasper] and informed that person that he was [Gasper's] partner." (¶9). Shortly thereafter, Gasper's contract to purchase was assigned to defendants Lewis and O'Neil who then jointly entered into a contract to purchase the very same condo and boat slip that Gasper had picked out, for the very same contract price of $345,000 (¶10), each putting down a $35,000 good faith payment for a total of $70,000 (¶11), and finally closing on the purchase approximately six weeks later, in January 1999 (¶13). Beginning as early as February 1999 and continuing until October 2004, Gasper and his friends and family were given use of the condo (¶14), while defendants Lewis and O'Neil jointly paid the mortgage (¶16).

Then, in Count 1 paragraph 2, the superseding indictment further alleges, after incorporating all of the General Allegations, that

> [defendants Lewis and O'Neil] conspired ... to ... affect commerce ... through extortion, by Terrence W. Gasper ("Gasper") obtaining, under color of official right, the property of another with his consent, to wit: that [defendants Lewis and O'Neil] jointly provided property to Gasper, including a condominium located in Islamorada, Florida, to which Gasper was given full and complete access for his personal use and enjoyment as well as the personal use and enjoyment of others close to Gasper, and other things of value, while Gasper was Chief Financial Officer of the OBWC in return for official acts to assist [defendants Lewis and O'Neil] in retaining and obtaining investment business involving the OBWC. The proceeds derived from the activity described herein is [sic] in excess of 2.5 million dollars.

Even though the words "actively solicited" (or anything similar) are not found in the superseding indictment, when read as a whole, the indictment clearly outlines allegations that sufficiently suggest active solicitation and participation by both Lewis and O'Neil.

4

(1:06 CR 0291)

The Court perceived no good reason to grant the defendants' motion to dismiss Count 1 of the superseding indictment and, therefore, denied the Rule 29 motion made at the close of the government's case.

IT IS SO ORDERED.


| | |
|---|---|
|   November 17, 2006 |   *s/ David D. Dowd, Jr.* |
| Date | David D. Dowd, Jr. |
| | U.S. District Judge |